**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **19-01321-jw**

**ORDER**

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**08/13/2019**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 08/13/2019

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 19-01321-JW |
| | Chapter 13 |
| Tommie Millicent Brown, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon Tommie Millicent Brown's ("Debtor") Objection to Claim ("Claim Objection") of Deutsche Bank National Trust Company, as Certificate Trustee on behalf of Bosco Credit II Trust Series 2010-1 ("Creditor") filed on May 29, 2019. Creditor filed a response to the Objection on June 28, 2019 and a hearing was held on the matter. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core matter under 28 U.S.C. § 157. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[1]

## **FINDINGS OF FACT**

1. On March 6, 2019, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. Debtor's petition indicates that she lives at 2659 Poplin Avenue, North Charleston, South Carolina ("Principal Residence").

2. With her petition, Debtor also filed her schedules and statements on March 6, 2019. Debtor's schedules and statements do not list a claim held by Creditor.

3. Also on March 6, 2019, the Court issued a Notice of Chapter 13 Bankruptcy Case, which set the deadline for filing proofs of claim in Debtor's bankruptcy case for May 15, 2019.

---

[1] To the extent the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent the following conclusions of law are findings of fact, they are so adopted.

    4.    On April 12, 2019, Creditor filed an objection to the confirmation of Debtor's proposed chapter 13 plan, indicating that Creditor "is the holder/servicer of a Note and Deed of Trust dated September 5, 2002 in the original principal amount of Fifteen Thousand Five Hundred and Seventy-Two and 08/100 Dollars ($15,572.08) bearing interest at a rate of 7.00000% per annum." The objection also states that the Debtor's proposed plan does not provide treatment of Creditor's claim and therefore, fails to comply with the requirements of 11 U.S.C. §§ 1322(b)(3) and 1325(a)(5) . . . ."[2]

    5.    On May 15, 2019, Creditor filed a proof of claim ("Proof of Claim") asserting a claim ("Claim") in the amount of $15,621.87 secured by Debtor's Principal Residence. In listing the amount necessary to cure any default as of the date of the petition, Creditor states, "Total Debt POC . . . Matured on 09/06/2009[.]" The Proof of Claim asserts the Annual Interest Rate is 7%. The Proof of Claim included several attachments:

(a) **Mortgage Attachment (Official Form B 410A):** The Proof of Claim includes an incomplete Mortgage Proof of Claim Attachment ("Mortgage Attachment"), which is based on Official Form B 410A that is required to be used under Fed. R. Bankr. P. 9009. It appears Creditor completed Part 1, which lists the mortgage and case information, and Part 2, which provides the total debt calculation for the Claim (stating that the Claim is comprised of a principal balance in the amount of $8,228.20 and interest due in the amount of $7,393.58). In Part 3 of the Mortgage Attachment, which lists the arrearage due on the Claim as of the date of the Debtor's petition, Creditor states the amount due is $0.00 and notes the Proof of Claim is a "total debt POC." Similarly, in Part 4, which lists the monthly mortgage payment due, Creditor indicates a monthly payment of $0.00 is due. In Part 5 of the Mortgage Attachment, which requires a loan payment history of the claim from the first date of default, Creditor states "SEE ATTACHED LOAN HISTORY." However, no loan history is attached to the Claim.

(b) **First Lost Note Affidavit:** The Proof of Claim also includes a lost note affidavit ("First Lost Note Affidavit") executed by Creditor on April 10, 2019. The First Lost Note Affidavit states the note that serves as the basis of the Claim was dated "08/30/2002", that the borrower was Tommie Brown, that the loan amount was $9,294.77 and the originator was "CITIFINANCIAL, INC." The First Lost Note Affidavit also states Creditor is the

---

[2]     It appears Creditor was intending to refer to the anti-modification provision of 11 U.S.C. § 1322(b)(2) and not 11 U.S.C. § 1322(b)(3), which states that a chapter 13 plan may provide for the curing or waiving of any default.

2

holder and owner of the note and that the note is lost and cannot be found. The First Lost Note Affidavit does not list any of the payment terms, including the maturity date, or interest rate for the note, and does not include a copy of the original note.

(c) **Second Lost Note Affidavit:** The Proof of Claim includes a second lost note affidavit ("Second Lost Note Affidavit") executed by LVNV Funding LLC, dated June 21, 2006. The Second Lost Note Affidavit states that Debtor executed the Note to Citifinancial, Inc., which was recorded on "9/3/2002" in the County Records of Charleston, South Carolina.[3] The Second Lost Note Affidavit asserts that LVNV Funding LLC is the owner of the note and that the note is lost. Attached to the Second Lost Note Affidavit is a "Note Allonge," which states that it "is attached to and made part of the Note, for the purpose of Noteholder Endorsement to evidence transfer of interest." The "Note Allonge" purports to include an endorsement from LVNV Funding LLC to Franklin Credit Management Corp. and then an unexecuted blank endorsement from Franklin Credit Management Corp. The Second Lost Note Affidavit does not list any of the payment terms, including the maturity date, or interest rate for the note, and does not include a copy of the original note.

(d) **Recorded Mortgage:** The Proof of Claim also includes a copy of mortgage ("Mortgage") dated August 30, 2002 and recorded in the Charleston County public records on September 3, 2002. listing Debtor as the Mortgagor and Citifinancial, Inc. as the Mortgagee for a loan in the principal amount $9,294.77 that is "due and payable on 09/06/2009." The Mortgage does not state the interest rate for the note.

(e) **Assignments:** The Proof of Claim includes four assignments of the Mortgage—two recorded and two unrecorded. In the first assignment dated May 8, 2006, Citifinancial, Inc. assigned the Mortgage to LVNV Funding LLC. In the second assignment dated June 12, 2006, LVNV Funding LLC assigned the Mortgage to Franklin Credit Management Corp. The third assignment dated April 16, 2019, Franklin Credit Management Corporation assigned the Mortgage to The Huntington National Bank, As Certificate Trustee of Franklin Mortgage Asset Trust 2009-A. In the fourth assignment dated April 16, 2019, The Huntington National Bank, As Certificate Trustee of Franklin Mortgage Asset Trust 2009-A assigned the Mortgage to Creditor.

6. On May 29, 2019, Debtor filed the Claim Objection, which challenged the collection and amount of the Claim.

7. On June 28, 2019, Creditor filed a response to the Claim Objection ("Response"). In the Response, Creditor asserts that it "is the holder/servicer of a Note and Deed of Trust dated September 5, 2002 in the original principal amount of Fifteen Thousand Five Hundred and

---

[3] It does not appear the Note was recorded in the public records. It would appear the Second Lost Note Affidavit is referring to the recording of the related mortgage, which was recorded on September 3, 2002 in the public records.

3

Seventy-Two and 08/100 Dollars ($15,572.08) bearing interest at a rate of 7.00000% per annum." The Response also indicated that "Creditor did not attach a payment history with Form 410A due to the loan having matured in 2009, and will file an Amended Proof of Claim to fully itemize the amounts claimed along with a record of the missed payment from the date f [sic] default in 2006."

8.      On July 10, 2019, two days before the hearing on the Claim Objection and without leave from the Court, Creditor filed an amended proof of claim ("Amended Proof of Claim"). The Amended Proof of Claim appears to be identical to the Proof of Claim with the addition of a payment history of the mortgage loan beginning on June 5, 2006.

9.      Also on July 10, 2019, the parties submitted a joint statement of dispute ("Joint Statement"), in which the parties outlined the issues, arguments, and evidence to be presented at the hearing. The Joint Statement provides a clear indication that, among other arguments, Debtor disputes the collection and accuracy of the amount stated in the Proof of Claim and cites Creditor's failure to provide the information required by Fed. R. Bankr. P. 3001. Debtor defines the issues to be heard before the Court as "Whether the inaccuracies of the Proof of Claim and failure to adhere to Federal Rules of Bankruptcy Procedure should lead to a determination that the [C]laim be allowed at $0.00, or, in the alternative, sanctions issued in an amount equal to the outstanding loan balance along with attorney fees pursuant to Fed. R. Bankr. P. 3001(c)(2)(D)(ii)." In asserting that there are unexplained inconsistencies in the interest rate of the loan between the Proof of Claim and the original loan documents, Debtor states that she "believes that the inconsistencies at the very least amount to a failure to adhere to Fed. R. Bankr. P. 3001 but may also amount to an abuse of the bankruptcy process." Debtor also cites to the Creditor's inconsistent allegations as to the amount of the original principal balance on the loan.

10.     A hearing was held on the Claim Objection on July 12, 2019. Debtor was present at the hearing and her testimony was proffered, without objection, to the Court. No testimony was presented by the Creditor. Creditor only presented the Proof of Claim and Amended Proof of Claim; and therefore, Creditor relied exclusively on its filed claims. In addition, Debtor presented, without objection, a proof of claim filed by CitiFinancial, Inc. in a prior 2003 bankruptcy case (C/A No. 03-13143-JW) ("2003 Proof of Claim"). Unlike the Proof of Claim and Amended Proof of Claim, the 2003 Proof of Claim, included a copy of a Disclosure Statement, Note and Security Agreement dated August 30, 2002 ("Loan Agreement") that reflects an interest rate of 19.99% and monthly payments payable to CitiFinancial, Inc. in the amount of $211.41 for the payment due October 6, 2002, followed by 83 months of payments at $206.33.[4] In addition, Debtor presented a recent pre-petition credit report, which did not indicate or report a debt owed by her to Creditor or any alleged predecessors.

## CONCLUSIONS OF LAW

Debtor's Claim Objection challenges Creditor's ability to collect on the Claim and disputes the amount claimed. Debtor argues no collection efforts have been made on the alleged debt since her prior discharge in her 2003 Bankruptcy Case and that there are several discrepancies in the Proof of Claim, including the interest rate owed on the loan, the original principal balance due, and the date of last payment on the loan. Debtor also asserts Creditor has failed to attach the necessary documents to support the Claim as required by Fed. R Bankr. P. 3001.

---

[4]    Debtor's 2003 chapter 13 bankruptcy case resulted in Debtor being granted a discharge under 11 U.S.C. § 1328(a). However, Debtor's confirmed plan in the 2003 bankruptcy case provided for treatment of a home mortgage claim under 11 U.S.C. § 1322(b)(5), which is expected from discharge. Furthermore, on March 14, 2006, an Assignment of Claim Transfer Agreement pursuant to Fed. R. Bankr. P. 3001(e) was filed indicating that CitiFinancial, Inc. transferred the claim to Resurgent Capital Services, LP as Servicer for LVNV Funding LLC.

5

*Evidentiary Burden*

Generally, the burden of establishing the validity and amount of a bankruptcy claim shifts between the parties. Rule 3001 of the Federal Rules of Bankruptcy Procedure governs the form and content of a proof of claim and provides that if the claim is filed in accordance with the bankruptcy rules, the claim shall have *prima facie* evidence of validity and amount. Fed. R. Bankr. P. 3001(f); *Stancill v. Harford Sands, Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004). However, in circumstances where Fed. R. Bankr. P. 3001 requirements are not met and the claim lacks *prima facie* evidence of validity and amount, the burden is on the claimant to establish the validity and amount of the claim. *See In re Devey*, 590 B.R. 706, 721 (Bankr. D.S.C. 2018); *In re Mazyck*, 521 B.R. 726, 732 (Bankr. D.S.C. 2014). In such circumstances in which the claim lacks the *prima facie* presumption, the objecting party only needs to raise a basis for disallowance under 11 U.S.C. § 502(b) to satisfy its burden, such as a dispute as to the amount, validity or enforcement of the claim.

*Compliance with Fed. R. Bankr. P. 3001*

Debtor asserts that the Proof of Claim lacks *prima facie* evidence of validity and amount because the Proof of Claim does not comply with Fed. R. Bankr. P. 3001(c)(2)(C) by failing to attach a payment history for the Claim. Fed. R. Bankr. P. 3001(c)(2)(C) requires, in relevant part, that when a security interest is claimed in an individual debtor's principal residence, such as in this case, Official Form B 410A (including a payment history of the mortgage debt) shall be filed with the proof of claim.[5] Official Form B 410A requires a claimant to list, among other items, the calculation of the amount due to cure a pre-petition arrearage on the claim, the calculation of the

---

[5]   Pursuant to Fed. R. Bank. P. 9009, the Judicial Conference of the United States has prescribed the use of Official Form B 410A for the purposes of Fed. R. Bankr. P. 3001(c)(2)(C).

6

total amount of the debt owed on the claim, and a payment history of the debt from the first date of default.

In the present matter, it is not disputed that Debtor filed the case as an individual and that Creditor is asserting a secured claim in Debtor's Principal Residence; therefore, Fed R. Bankr. P. 3001(c)(2)(C) required a completed Official Form B 410A to be included with the filed Proof of Claim. While the Proof of Claim attached an Official Form B 410A, Creditor admits that it was incomplete as the Creditor did not include a payment history of the loan as required by the Official Form. This payment history is critical to substantiate the amount of the Claim in this case.

In its Response to the Claim Objection, Creditor noted that it did not attach a payment history because the Claim had matured in 2009. However, neither Fed. R. Bankr. P. 3001(c) nor the instructions to Official Form B 410A provide an exception to the requirement to attach a payment history when the loan has matured. In fact, the 2015 Committee Note for the Official Form notes that the payment history is important for both the calculation of a total amount of a claim and the claim's arrearage amount, indicating that the "[a]ttachment of a loan history with a home mortgage proof of claim will also provide transparency about the basis for the claimant's <u>calculation of the claim</u> and arrearage amount." (emphasis added). Therefore, the Court finds no basis for Creditor's argument that it was not required to attach a payment history with the Claim merely because the Claim had matured pre-petition.

For these reasons, the Court finds the Proof of Claim was not filed in accordance with Fed. R. Bankr. P. 3001(c)(2)(C), and therefore lacks *prima facie* evidence of validity and amount pursuant to Fed. R. Bankr. P. 3001(f).[6] *See Maddux v. Midland Credit Management, Inc.*, 567 B.R.

---

[6] Debtor also argued that the Proof of Claim did not comply with Fed. R. Bankr. P. 3001(c)(2)(A), which provides that "[i]n a case in which the debtor is an individual: . . . [i]f, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." As the Proof of Claim did not comply with

7

489 (Bankr. E.D. Va. 2016) (finding a claim lacked *prima facie* evidence of validity and amount when the claim attached an itemized statement that did not accurately indicate the amount of interest and fees owed on the claim).

*Amendment of the Proof of Claim*

On the eve of the hearing on the Claim Objection and after the deadline for filing claims, Creditor filed the Amended Proof of Claim, with a completed Official Form B 410A (including a payment history of the loan). At the hearing on the Claim Objection, Creditor relied exclusively on the Proof of Claim and Amended Proof of Claim, presenting no evidence to establish the validity and amount of its Claim.

While Creditor made no request to the Court for leave to amend the Proof of Claim, the Court must consider whether the Amended Proof of Claim should be allowed or stricken under these circumstances. Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure expressly allow amendments to proofs of claims. As this Court recently noted, "[w]hether or not to allow a party to amend its claim is within the sound discretion of the Court." *Devey*, 590 B.R. at 727. "While, as a general matter, claim amendments are often allowed to permit a claimant to cure a defect in its originally filed claim, there is no absolute right to amend a proof of claim, and undue prejudice to the opposing party or other creditors, undue delay or bad faith are grounds to deny an amendment to a timely filed proof of claim." *Id.* at 727–28 (citations omitted).

In the present matter, there are several factors that weigh against the Court's allowance of the Amended Proof of Claim. First, the Amended Proof of Claim was filed well after the deadline for filing claims. Second, the Amended Proof of Claim was filed after Debtor filed the Claim

---

Fed. R. Bankr. P. 3001(c)(2)(C), it is not necessary for the Court to also determine at this time if the Proof of Claim complied with Fed. R. Bankr. P. 3001(c)(2)(A).

Objection, which first raised the issues regarding the compliance of the originally filed Proof of Claim with the Bankruptcy Rules. Furthermore, there was significant delay by Creditor to correct the issues with the Proof of Claim. The Amended Proof of Claim was filed 56 days after the filing of the original Proof of Claim, and 42 days after the filing of the Claim Objection. No excuse or justification was provided for the delay in correcting the Proof of Claim.

In addition, Creditor waited until the eve of the contested hearing on the Claim Objection to amend the Proof of Claim, which prejudices Debtor in her preparations for the contested hearing, by changing the issues and burdens before the Court and increasing the time and attorney's fees necessary to prepare for the hearing. Importantly, the Court cannot condone the filing of an amended proof of claim on the eve of a contested hearing if filed in an attempt to obtain the evidentiary presumption provided by of Fed. R. Bankr. P. 3001(f). In this matter, rather than presenting evidence at the contested hearing on the Claim Objection, Creditor relied solely on its Amended Proof of Claim filed on the eve of that hearing. Allowing such an approach would unfairly shift the burden of proof on the eve of a contested hearing. *See Devey*, 590 B.R. at 728 ("To grant [the claimants' motion to amend the proof of claim at the hearing on the objection to claim] would enable the [claimants] to circumvent the consequences of their evidentiary failures, and would unfairly and without notice impose a significant procedural and financial burden on Debtor.").

The principals of Fed. R. Bankr. P. 3001(f) are simple—file a claim in accordance with the Bankruptcy Rules and the claim will have presumptive evidence of validity and amount. It serves as both the benefit for filing a claim in accordance with the Rules (a lower evidentiary burden) and equally the consequence for failing to comply with the Rules (a higher evidentiary burden). Subsection (f) of Fed. R. Bankr. P. 3001 provides the impetus for claimants to file an initial claim

9

with all of the required disclosures under the Rule. These required disclosures under Fed. R. Bankr. P. 3001, such as those required in Official Form 410A, not only provide transparency for the basis and amount of the claim asserted but also avoid unnecessary litigation from contested claim objections by providing key information about the claim to the debtor. To allow a claimant who filed a claim that was not in accordance with the rules to remedy the defects and obtain presumptive evidence of the claim's validity and amount by filing an amended claim on the eve of the contested hearing would effectively defeat the very purpose of Fed. R. Bankr. P. 3001(f) and provide no incentive to claimants to initially file a proof of claim with all the required disclosures in accordance with the rules. *See also In re DePugh*, 409 B.R. 125 (Bankr. S.D. Tex. 2009) ("This Court does not believe that the Supreme Court contemplated that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains and then cry 'no harm no foul' by producing documents that should have been produced to begin with.").

For these reasons and under these circumstances, the Court declines to allow the Amended Proof of Claim,[7] and strikes it from the record.[8] *See also In re Gilbreath*, 395 B.R. 356, 366 (Bankr. S.D. Tex. 2008) (finding the bankruptcy court had discretion to refuse to allow a claimant's amended proof of claim that was filed, without leave of the court or the debtor's consent, after the

---

[7] In the Proof of Claim, Creditor included additional language that is not part of the Official Proof of Claim Form (Official Form 410). This additional language stated:

> THE CREDITOR RESERVES THE RIGHT TO AMEND THE CLAIM FOR ANY OF THE FOLLOWING REASONS: Any omission or calculation error resulting in a mistake in the dollar amount; any change in the interest rate applicable to this loan; and change in the requirements for escrow due to any change in the costs for taxes or insurance.

The Court finds this reservation of rights included in the Proof of Claim by Creditor is not allowable and has no legal effect.

[8] The Court notes that while the Amended Proof of Claim is not allowed, it did not preclude Creditor from otherwise establishing the validity and amount of its Claim through the presentation of evidence at the hearing on the Claim Objection.

10

debtor filed an objection to the claim); *In re Perron*, 474 B.R. 310, 314 (Bankr. D. Me. 2012) ("[I]t is altogether possible that, in the face of a claims objection, a creditor may delay amending its proof until the eve of trial, placing the objecting debtor at procedural disadvantage. In such cases, a court may exercise its discretion to consider the claims contest as one in which the adversary rule governing amendments to pleadings applies, and under appropriate circumstances, deny the creditor leave to amend its proof of claim.").

*Allowance of Claims under the Bankruptcy Code*

Upon determining the parties' evidentiary burdens, the Court turns to whether Creditor's Proof of Claim should be allowed. Section 502 of the Bankruptcy Code governs the allowance of claims in a bankruptcy case. Section 502(a) provides that "[a] claim is deemed allowed, unless a party in interest . . . objects." Section 502(b) provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition . . . ." Only upon determining the amount of the claim shall the Court then allow the claim in that amount (subject to certain listed exceptions). 11 U.S.C. § 502(b) (2019).

In the present matter, Debtor's Claim Objection challenged the collection and amount of the Claim. Debtor points to the lack of collection activity on the debt represented by the Claim in over 12 years and the failure to report any such debt due under her credit report, the significant discrepancies and inconsistencies in the Proof of Claim, and Creditor's failure to comply with the disclosures required by Fed. R. Bankr. P. 3001.

In this case, while it appears that a debt was incurred in 2002, Debtor ceased, at some point, to make payments on the Loan Agreement and a discharge was granted in her 2003 bankruptcy case. In the more than 12 years that followed, it does not appear that Creditor or any other party sought to collect on the Loan Agreement, nor reported a debt due on Debtor's credit report issued

shortly before she filed her present bankruptcy case. For these reasons, Debtor had a reason to doubt that a debt remained due and she did not list Creditor in her schedules. According to Debtor and her counsel, the Creditor's Proof of Claim seemingly "appeared out of the blue," and as a result, required careful review.

At the hearing, Debtor called to the Court's attention the fact that the Proof of Claim lists the debt's interest rate at 7% but that the alleged applicable Loan Agreement provides for an interest rate of 19.99%. In response, Creditor's counsel did not provide an explanation for the discrepancy in the interest rate.[9] In fact, in the Joint Statement, Creditor's counsel stated that "the current Creditor is unable to state with certainty as to how and when the interest rate changed, as the original documents, along with any possible loan modification or modification in interest agreement were not given to the current Creditor when it acquired the loan." The fact that the Creditor does not know how or when the interest rate changed on the Loan Agreement or whether there was modification of the Loan Agreement raises serious concerns about the accuracy of the Proof of Claim, and causes both the Proof of Claim and Amended Proof of Claim to be of limited probative value.

This matter is further complicated as Creditor's own filings in this case reported inconsistent amounts for the Loan Agreement's original principal balance. The Lost Note Affidavit included with the Proof of Claim and the Loan Agreement, included with the 2003 Proof of Claim, indicated the original principal balance was $9,294.77. However, in its Response to the Claim

---

[9] Creditor's counsel merely indicated that a lower interest rate would benefit Debtor. However, such an explanation does not assuage the Court's concerns regarding the accuracy of Creditor's calculation of the amount of its Claim.

12

Objection and its Objection to Confirmation, Creditor indicated the Loan Agreement's original principal balance is $15,572.08.[10]

In addition, a review of the proposed Amended Proof of Claim demonstrates further discrepancies. Under the payment history included with the Amended Proof of Claim, Creditor indicates that the monthly contractual payment amount is $100.00; however, the Loan Agreement, included in the 2003 Proof of Claim indicates that the monthly contractual payment amount is $206.33. Further, the payment history states that Debtor is contractually due for the June 5, 2006 payment with the outstanding principal balance owed of $8,228.20; however, based on the amortization schedule under the terms of the Loan Agreement, the outstanding principal balance owed when the June 5, 2006 payment became due would be approximately $5,990.13. It is unclear why there is this discrepancy in the application of Debtor's payments on the Claim. These discrepancies in the attached payment history create a significant question as to the accuracy in and the reliability of both the Proof of Claim and Amended Proof of Claim and whether payments were properly applied on the Loan Agreement and whether the Claim was properly calculated.

By statute, when an objection is filed to a claim, this Court must determine the amount of the claim; however, in this matter, the Court cannot. In situations like the present one, where the evidence presented by a claimant is insufficient to determine the amount of a claim, the Court's determination must fall against the party with the burden of proof. *See In re Parrish*, 326 B.R. 708, 721 (Bankr. N.D. Ohio 2005) (holding that a proof of claim was insufficient because the claimant "fell woefully short of proving the amount of its claim[,]" including not providing "a satisfactory explanation for why its most recent figures should be believed, given that they are based on

---

[10] At the hearing, counsel for Creditor indicated that the inconsistency in the outstanding principal balance was his error. However, counsel for the Creditor did not explain how this error occurred.

13

calculations that the court has found do not accurately reflect the account activity"). As Creditor has failed to satisfy its burden of demonstrating the amount of its Claim by the preponderance of the evidence, the Court finds the Claim should not be allowed.[11] Therefore, the Court sustains Debtor's Objection.[12]

*Sanctions under Fed. R. Bankr. P. 3001(c)(2)(D)*

As part of the Claim Objection, Debtor also seeks sanctions under Fed. R. Bankr. P. 3001(c)(2)(D). This rule provides:

> If the holder of a claim fails to provide any information required by subdivision (c) [of Fed. R. Civ. P. 3001], the court may, after notice and a hearing, take either or both of the following actions:
>
> (i)   preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>
> (ii)  award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

It appears sanctions under Fed. R. Bankr. P. 3001(c)(2)(D) are warranted in this matter. Creditor admitted to failing to provide the loan payment history in the Official Form B 410A as required by subdivision (c) of the rule. While Creditor asserts that the failure to attach the loan payment history was harmless, it is apparent that the omission led to the filing of the Claim Objection by

---

[11] While not raised by Debtor, it appears Creditor's Proof of Claim is also untimely under Fed. R. Bankr. P. 3002(c)(7) and subject to disallowance under 11 U.S.C. § 502(b)(9). In 2017, Fed. R. Bank. P. 3002 was amended to provide the following: "A proof of claim filed by the holder of a claim that is secured by a security interest in the debtor's principal residence is timely filed if: (A) the proof of claim, together with the attachment required by Rule 3001(c)(2)(C), is filed not later than 70 days after the order for relief is entered; and (B) any attachments required by Rule 3001(c)(1) and (d) are filed as a supplement to the holder's claim not later than 120 days after the order for relief is entered." Creditor admitted that it did not file a completed Official Form B 410A as required under Fed. R. Bankr. P. 3001(c)(2)(C) prior to the 70-day bar date under Fed. R. Bankr. P. 3002(c)(7); therefore, it appears the Proof of Claim may be deemed untimely under the rules and therefore disallowed.

[12] The Court notes that the disallowance of Creditor's Proof of Claim does not address or otherwise void any lien Creditor may hold on Debtor's Principal Residence. *See, e.g., In re Carrsow-Franklin*, 524 B.R. 33, 55 (Bankr. S.D.N.Y. 2015) (noting that a secured creditor's lien still encumbers the debtor's property after the Court disallowed the secured creditor's claim for failing to prove its claim during a contested claims objection matter).

Debtor and her counsel, resulting in delay and the incurrence of expenses and attorney's fees. "The resolution of claims in bankruptcy is designed to be a fair and inexpensive process. [Debtors are] entitled to sufficient information to evaluate the validity of the . . . Claims without undue burden or expense." *Maddux*, 567 B.R. at 500 (finding sanctions of an award of attorney's fees were appropriate under Fed. R. Bankr. P. 3001(c)(2)(D) when the claimant failed to attach required documentation that resulted in the debtor having to file an objection to the claim in order for the Creditor to substantiate its claim). For these reasons, the Court finds that Debtor should be awarded her reasonable expenses and attorney's fees that she incurred in filing and prosecuting the Claim Objection.

## **CONCLUSION**

The Court hereby sustains the Claim Objection filed by Debtor. The Proof of Claim filed by Deutsche Bank National Trust Company, as Certificate Trustee on behalf of Bosco Credit II Trust Series 2010-1 on May 15, 2019 is not allowed, and the Amended Proof of Claim filed on July 10, 2019 is stricken. Further, Debtor is entitled to her reasonable expenses and attorney's fees for filing and prosecuting the Claim Objection pursuant to Fed. R. Bankr. P. 3001(c)(2)(D). Debtor's counsel shall file an itemized statement of Debtor's reasonable expenses and a record of counsel's time and hourly rate in this matter no later than ten days after the entry of this Order. Any objection to the expenses and reasonableness of the attorney's fees asserted by Debtor shall be filed no later than ten days after the filing by Debtor. If necessary, a hearing will be held to determine an award of reasonable expenses and attorney's fees.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
August 13, 2019